# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**United States of America**

       v.

Case No. 21-cr-168-PB
Opinion No. 2022 DNH 081

**Ronald Angell**

## MEMORANDUM AND ORDER

Ronald Angell was arrested in a McDonald's parking lot for driving while intoxicated after police officers responding to a 911 call found him slumped over the steering wheel of his car. The officers decided to tow Angell's car, which had a missing rear window, to a third-party garage. They began an inventory search of the vehicle before the tow truck arrived, but they stopped the search and obtained a search warrant after one of the officers found a bag filled with a white powdery substance in the well between the front seats.

Angell has moved to suppress the drug evidence, arguing that the search and seizure of his vehicle violated the Fourth Amendment. The government's main argument in response is that the vehicle was lawfully searched and seized under the community caretaking exception to the search warrant requirement. For the following reasons, I find both that the police

were justified in conducting an inventory search and that they did not exceed the lawful scope of that search.

## I.   **BACKGROUND**[1]

In the afternoon of July 8, 2021, a McDonald's employee called 911 to report that a man was slumped over the wheel of a car in the restaurant's parking lot in Lee, New Hampshire. Lee Police Department Officer Evan Carey responded to the call, along with firefighters and emergency medical technicians (EMTs). As he approached the car, Officer Carey observed the rear window on the driver's side of the car was missing and the rear end of the vehicle was damaged. The engine was running, the brake lights were illuminated, and the radio was playing. The sole occupant of the car was a man in the driver's seat who was slumped over the steering wheel and appeared to be unconscious or asleep. The man was later identified as Angell.

Firefighters knocked on the car window and roused Angell. After he exited the car, Angell explained that he had fallen asleep because he had not slept for a couple of days but that he was feeling "OK." Officer Carey observed

---

[1]   I make these factual findings based on the testimony and other evidence received at the suppression hearing. To the extent there is any inconsistency between the factual and legal findings in my oral rulings at the hearing and this written order, this order controls.

that Angell's eyes were bloodshot and glassy, his pupils appeared restricted,[2] and he had blue paint on his hands. Angell refused to give his name when Officer Carey asked him to identify himself.

While a firefighter attempted to assess Angell's condition, the Lee Fire Chief signaled for Officer Carey to come over to the passenger side window. Through the window, Officer Carey observed a needle in the center console underneath the radio, as well as a glass smoking pipe and a hand-held torch on the floorboard of the driver's seat.

Meanwhile, Angell asked the firefighter who was attempting to evaluate him if they could go somewhere else. When the firefighter offered the back of the ambulance, Angell got into the ambulance, where the EMTs evaluated him for about ten minutes before medically clearing him. During that time, Officer Carey ran the vehicle registration, learned Angell's identity and that he was on probation, and spoke with his probation officer. Officer Carey informed the probation officer that he would likely arrest Angell for driving while intoxicated (DWI).

---

[2]     Officer Carey testified that he believed Angell's pupils were restricted. On the body camera footage, he first described Angell's pupils as dilated but immediately corrected himself when a firefighter stated that Angell's pupils were "pinpoint." I credit Officer Carey's testimony that he believed Angell's pupils were restricted but based on the testimony of Alyssa Collette, the EMT who later measured Angell's pupils, I find that his pupils were normal size.

As Angell exited the ambulance, Officer Carey and Officer Vanessa Simms, who had arrived while Angell was being evaluated, approached him. After Angell again declined to identify himself and refused to take sobriety tests, the officers arrested him.

Following the arrest, Officer Carey decided to tow Angell's car to Alan's Garage and instructed Officer Simms to conduct an inventory search. A few minutes into the search, Officer Simms exited the vehicle and beckoned Officer Casey to show him a clear bag filled with a white powdery substance on the driver's seat. When he asked her where she had found it, Officer Simms explained that it was in the well between the front seats. At that point, Officer Carey decided to stop the search and apply for a search warrant. The drugs, later found to be fentanyl, methamphetamine, and buprenorphine, were seized as evidence.

The Lee Police Department has two written policies that the parties argue are relevant in this case. The "Community Caretaking Inventory" policy ("Inventory Policy") sets out the procedures for when officers are carrying out "non-investigatory community caretaking responsibilities." Gov't Ex. 2 at 1. The procedures are different for "impounded vehicles" and "towed non-impounded vehicles." Id. at 1-2. Officer Carey testified that an "impounded vehicle" is taken into police custody to execute a search warrant, but a "towed non-impounded vehicle" is hauled to a third-party garage for

4

safekeeping until the owner can reclaim it. The Inventory Policy instructs officers to inventory "towed non-impounded vehicles" before towing and to "remove and safeguard any valuables or personal property found in plain view." Id. at 2. The purpose of such inventory search "is to provide for safekeeping the public's property." Id.

Officer Carey was unaware at the time that the department also had a separate "Impaired Drivers" policy ("DWI Policy") that contained guidelines for handling suspected DWI offenders. See Gov't Ex. 3. Section III(B) of that policy, titled "Towing Vehicle," provides that "[t]he subject will be asked whom he wishes to have remove his vehicle from the scene. If arrangements cannot be made in a reasonable amount of time the next wrecker on the department's rotating list will be contacted." Id. at 3. Angell was not asked if he wished for someone to retrieve his car instead of having it towed.

Angell was indicted for possession with intent to distribute methamphetamine and fentanyl. He moved to suppress the drug evidence, challenging all aspects of his encounter with Officers Carey and Simms. Specifically, he argued that his initial seizure was an unlawful Terry stop, that he was arrested without probable cause, and that his vehicle was illegally searched and seized. After holding a hearing on Angell's motion, I ruled from the bench that the initial seizure was justified as an exercise of the police officers' community caretaking responsibilities because it was a

reasonable and limited investigation of Angell's health status. I also found

that the officers had developed probable cause during their encounter with

Angell to believe that he had committed both the offense of DWI, see N.H.

Rev. Stat. Ann. § 265-A:2,[3] and the offense of failing to give his name when

the officers asked him to identify himself at a time when he was in control of

a vehicle, see id. § 265:4.[4] I took under advisement Angell's arguments that

the police unlawfully searched and seized his vehicle. The parties submitted

additional briefing on those issues after the hearing, which I have carefully

considered.

## II.   STANDARD OF REVIEW

A defendant who moves to suppress evidence bears a threshold burden

of showing that a Fourth Amendment violation has occurred. United States v.

Young, 835 F.3d 13, 19 (1st Cir. 2016). This includes the burden of showing

---

[3]      Under New Hampshire law, the offence of DWI occurs when a person
operates or is in actual physical control of a vehicle while under the influence
of alcohol or drugs. See N.H. Rev. Stat. Ann. §§ 265-A:2, 259:24; see also
State v. Winstead, 150 N.H. 244, 247–48 (2003) (defendant found asleep in
the driver's seat of a parked car with the engine running was in "actual
physical control" of a vehicle for purposes of the DWI statute); State v.
Willard, 139 N.H. 568, 571 (1995) (similar). The statute does not require that
the car be located on a public way. See Winstead, 150 N.H. at 247–48 (vehicle
parked in a Walmart parking lot).

[4]      Although Officer Carey informed Angell that he was arrested for
possession of drug paraphernalia, the government did not argue, and I did
not find, that Officer Carey had probable causes to arrest Angell for a
violation of New Hampshire's drug paraphernalia law.

that he was subjected to a warrantless search or seizure. United States v. Fields, 823 F.3d 20, 25 (1st Cir. 2016). Once the defendant establishes that a warrantless search or seizure occurred, the burden shifts to the government to prove by a preponderance of the evidence that the search or seizure was lawful. See United States v. Matlock, 415 U.S. 164, 178 n.14 (1974); United States v. Manubolu, 13 F.4th 57, 69 (1st Cir. 2021).

## III.  ANALYSIS

Angell argues that the warrantless search and seizure of his vehicle violated the Fourth Amendment for two independent reasons. He first claims that the officers' decision to tow his vehicle was unlawful because, contrary to a procedure outlined in the DWI Policy, he was not given an opportunity to arrange for someone to retrieve his car. Angell also contends that the scope of the inventory search was constitutionally invalid because, contrary to the Inventory Policy, it was not limited to items in plain view and was conducted for an investigatory purpose. The government responds that the decision to tow the car was a reasonable exercise of the officers' community caretaking function and that the attendant inventory search complied with the Inventory Policy and served a legitimate, non-investigatory aim.[5]

---

[5]  The government also defends the search and seizure based on the automobile exception to the warrant requirements. See, e.g., United States v. White, 804 F.3d 132, 136 (1st Cir. 2015). Because I conclude that the

## A.      Decision to tow and inventory the vehicle

The community caretaking function is a well-recognized exception to the general rule that a search or seizure be authorized by warrant. United States v. Rivera, 988 F.3d 579, 581 (1st Cir. 2021); United States v. Coccia, 446 F.3d 233, 237–38 (1st Cir. 2006). The exception is grounded in the recognition that police officers often perform non-investigatory tasks when acting as community caretakers, such as removing vehicles that pose a public safety threat or would be at risk for theft or vandalism if left unattended. See Boudreau v. Lussier, 901 F.3d 65, 71–72 (1st Cir. 2018); Coccia, 446 F.3d at 238; United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991). An officer's decision to tow a vehicle in the exercise of the community caretaking function must be "reasonable under the totality of the circumstances." United States v. Sylvester, 993 F.3d 16, 23 (1st Cir. 2021). Although the community caretaking function cannot serve as a pretext for investigation, the existence of both investigatory and community caretaking motives does not invalidate an otherwise reasonable decision to remove a vehicle. Id. at 23–24.

Officer Carey's decision to tow Angell's car after they arrested him was a reasonable exercise of his community caretaking responsibilities. Although

---

community caretaking exception applies, I need not reach this alternative argument.

the car did not present an imminent traffic hazard because it was legally

parked in a commercial lot, its broken rear window and the presence of a

backpack on the front seat made it an obvious target for theft or vandalism.

The presence of drug paraphernalia in plain view in the car compounded the

risk to public safety of leaving the vehicle unattended. Because the officers

could not secure the car or its contents, and there was no one else present on

site who could care for the vehicle, their decision to tow it for safekeeping was

reasonable. See Boudreau, 901 F.3d at 72–73 (presence of personal

possessions inside a vehicle that made it a target for theft or vandalism

among the factors supporting impoundment of the vehicle); Rodriguez-

Morales, 929 F.2d at 785 (removing a vehicle from the shoulder of a busy

highway reasonable because it "would have been easy prey for vandals" and

"would have posed a safety threat"); see also Commonwealth v. Lugg, 84

Mass. App. Ct. 1127 (2013) (decision to impound a car with an open window

legally parked along Revere Beach Boulevard reasonable because of the

possibility of theft or vandalism); People v. Scigliano, 241 Cal. Rptr. 546, 548–

49 (Ct. App. 1987) (officer could impound a car with a missing windshield

stopped in a restaurant parking lot because "there was no way to secure the

vehicle" and personal valuables inside it were "visible and unprotected");

State v. Tully, 348 A.2d 603, 609 (Conn. 1974) (warrantless entry to retrieve

for safekeeping a guitar from an unlocked vehicle parked in a vacant school

parking lot reasonable in part because a missing vent window rendered it "incapable of being secured in its exposure to a genuine threat of vandalism"). But see State v. Thirdgill, 613 P.2d 44, 45–46 (Or. App. 1980) (without addressing the risk of vandalism or theft, finding impoundment unlawful where defendant's car with a broken-out window was parked in a restaurant parking lot).

Although Angell disagrees, the officer's otherwise reasonable decision to tow his car did not violate Angell's Fourth Amendment Rights merely because the officers unwittingly failed to comply with one aspect of the DWI Policy. In Coccia, the First Circuit made clear that "[i]t is inappropriate for the existence of (and adherence to) standard procedures to be the sine qua non of a reasonable impound decision." 446 F.3d at 239 (emphasis added). Instead, the court emphasized that the legitimacy of a community caretaking justification for moving a vehicle depends on the reasonableness of officers' actions. Id. Thus, the court rejected the argument that the absence of standardized removal criteria was determinative and focused instead on the totality of the circumstances that the officers faced at the scene. See id.

Some courts of appeals have called Coccia into question and have instead required both that the removal be reasonable on the specific facts and that it be pursuant to and consistent with standardized removal criteria. See, e.g., United States v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015). Relying

on those authorities, Angell suggests that Coccia should be limited to cases where no standardized procedures were in place and not extended to situations when officers fail to follow established procedures. A recent First Circuit case, however, forecloses that argument. See Sylvester, 993 F.3d at 23–24.

The facts in Sylvester are closely analogous to this case. There, the district court found that the officers who impounded the defendant's car after arresting him on the side of a busy road violated aspects of the police department's policies on impoundment and inventory by failing to notify him that he could request a third party to remove his vehicle. Id. at 21. The First Circuit nevertheless affirmed the district court's finding that the removal was constitutionally valid as a reasonable exercise of the officers' community caretaking function. Id. at 23–24. Relying on Coccia, the court held that the officers' failure to fully comply with standardized policies does not defeat an otherwise legitimate community caretaking justification. Id. So too here. Considering that the decision to tow Angell's car was reasonable under the circumstances and the officers fully complied with the Inventory Policy, their

good-faith mistake in failing to follow one aspect of the separate DWI Policy does not invalidate the decision to inventory and tow Angell's car.[6]

## B.  Scope of the inventory search

Angell next argues that the scope of the inventory search exceeded the lawful bounds of the Fourth Amendment both because it was not limited to items in plain view in violation of the Inventory Policy and because it amounted to a search for evidence. Neither argument is convincing.

"The Fourth Amendment permits a warrantless inventory search if the search is carried out pursuant to a standardized policy and on the basis of something other than suspicion of evidence of criminal activity." Sylvester, 993 F.3d at 25 (cleaned up). The Inventory Policy limited the search to personal property and valuables found in plain view. Officer Simms testified that, from her vantage point inside the car, a clear bag filled with a white powdery substance was visible in the well between the front seats. In other words, she found suspected drugs in plain view. See United States v. Hernandez-Mieses, 931 F.3d 134, 140 (1st Cir. 2019) (object with apparent

---

[6]     To the extent Angell cites Officer Carey's testimony about a general practice of towing every vehicle in suspected DWI cases for the proposition that the removal was unreasonable, I need not determine whether the outer bounds of that practice would comply with the Fourth Amendment. The decision to tow Angell's vehicle was supported by particularized, case-specific facts showing that the vehicle would be vulnerable to vandalism or theft in its current location. That is enough for this case to fall within the community caretaking exception.

incriminating nature that is "easily visible to the naked eye" of an officer who has a right to be in the position to have that view is subject to seizure under the plain view doctrine) (cleaned up). Her credible testimony tracks Officer Carey's testimony about what she told him right after finding the bag, as well as his body camera footage showing that she found it almost immediately after starting the inventory search. Thus, I find that the inventory search was conducted in accordance with the Inventory Policy and that the drugs were in plain view.

Considering that the search followed on the heels of a reasonable decision to tow the car to a third-party garage, I also find that it served a legitimate, non-investigatory purpose. As the Inventory Policy states, towed non-impounded vehicles are inventoried in order to safeguard any personal property plainly visible inside. Consistent with the officers' credible testimony, I find that Angell's car was searched for this purpose.

Angell argues that the inventory search was a subterfuge to search for evidence of criminal activity. In support of that argument, he notes that the property in the car was not cataloged and that the search was stopped as soon as the drugs were found. I do not find that either officer had an investigatory motive in conducting the search. But even if they had a mixed motive, that would not invalidate the inventory search. See Sylvester, 993 F.3d at 23; Coccia, 446 F.3d at 241. Further, notwithstanding Angell's

argument to the contrary, the officers' decision to stop the search and apply for a search warrant as soon as they found suspected drugs is evidence of sound judgment rather than subterfuge. Angell's challenges to the scope of the inventory search, therefore, must fail.

## IV.  <u>CONCLUSION</u>

For the above reasons and the reasons set forth in my oral rulings at the suppression hearing, Angell's motion to suppress (Doc. No. 14) is denied.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

July 11, 2022

cc:    Counsel of record